MATTER OF YARON, ET AL.

In VISA PETITION Proceedings

A-13199137-8-9-40

*Decided by Regional Commissioner November 4, 1963*

The beneficiaries, members of a singing and acting comedy troupe which has been the subject of many favorable trade paper reports and comments by theatrical critics of the New York newspapers and theatrical press, possess "exceptional ability" within the contemplation of section 203(a)(1)(A), Immigration and Nationality Act, and are eligible for first preference classification.

These matters are before the Regional Commissioner on appeal from the decision of the District Director at New York, New York who has found it necessary to deny each of these petitions for first preference quota status in the belief that no substantial evidence has been submitted to show that each possesses the degree of exceptional ability contemplated by section 203(a)(1) of the Immigration and Nationality Act or that the services of each would be beneficial prospectively to the cultural interest of the United States.

The petitioner is a theatrical agency in New York, New York which has been in business during the past ten years. The petitioner and the beneficiaries are signatory to a one year contract with an option for a second year. The four beneficiaries are the personnel of a singing and acting comedy troupe known as "The Four Ayalons." They have been in the United States filling entertainment engagements during the past several months.

The evidence accompanying these petitions discloses that this group has earned an income of $47,435 between October 1, 1962 and September 30, 1963 and that during this time the group has been the subject of many favorable newspaper and trade paper reports.

Among the letters evidencing employment or favorable commendations are those from Joey Adams, President of the American Guild of Variety Artists; Jennie Grossinger, the operator of Grossinger's Hotel and a member of the Board of Directors of the America-Israeli Cultural Foundation and the chairman of Music Alliance; Dan Barker; Charlie Manna, comic baritone; Buddy Walker; Monroe B. Hack, Di-

699

rector of Entertainment at Tamiment, In-The-Poconos; Al Datz, Director of ABC Music Library; Roy Davis, New York Branch Manager of the American Guild of Variety Artists; Michael Golan, Algon Theatrical Enterprises, Records; Philip Sevush, The Eldorado, Fallsburg, New York; David Rivlin, Consul of Israel at New York, New York, and I. M. Biderman, Director of the Jewish National Fund, Department of Youth and Education. The Ayalons have appeared at the New York Town House under the sponsorship of the Yeshiva College Student Council; at Carnegie Hall, New York as a part of the Chanukah Stars of the 1962-63 season; at the Rego Park Jewish Center under the sponsorship of the Sisterhood; at the Mayfair Club; and for fourteen months at Leo Fuld's, Cafe Sahbra.

This group has been the subject of the following comments by the theatrical critics of the New York newspapers and theatrical press:.

" 'The Ayalons', all four handsome youths, have the voices and ability to click as a quartet of enthusiastic singers. Their comedy acts are a howl."—Wear (Variety)

"The Four Ayalons, a quartet of bright young comics who sing, dance, mug and kid our local heroes with a deft touch."—Martin Burden (N.Y. Post)

"Israel's leading comedy vocal quartet. The Ayalons, in their lively act of broad comedy is more American than many American acts."—Gene Knight (The New York Journal American)

"The Four Ayalons who combine some refreshing comedy, satire and impressions should be hitting top T.V. programs before long."—Frank Queen (New York Mirror)

"Those zany Four Ayalons, Israel's top comedy group, scoring a big hit in the U.S."—Ted Green (Radio Daily and T.V. Daily)

"The Four Ayalons, singing pranksters who are especially puckish in skits beguiling to Jew and Gentile alike."—Eugine Boe (Cue Magazine)

"The term 'exceptional ability' as used in section 203(a)(1)(A) of the Immigration and Nationality Act, contemplates something more than what is usual, ordinary or common, and requires some rare or unusual talent, or unique or extraordinary ability in an occupation, profession, or calling which requires talent or skill. Whether or not a person possesses exceptional ability must, as a general rule, rest upon the opinions of persons who are qualified experts in the field in which the exceptional ability is claimed. Expert testimony is excepted from the general rule relating to opinion evidence, and constitutes admissible evidence which may be weighed and considered with all other evidence, because it informs about matters gained by study or practical experience, not within the full understanding of the average person." *Matter of T—C—F—F—C—*, 5 I. & N. Dec. 454.

From all of the evidence of record, it is concluded that the beneficiaries are entertainers of exceptional ability. For the reasons stated this petition will be granted.

*It is ordered* that the appeal be sustained and the petition granted.